| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. 6:14-CV-00005 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| WILLIAM WALLIS , | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on cross-motions for summary judgment.  Dkts. 115 & 126.  Specifically, the United States of America ("United States" or "Government") brought suit against William Wallis pursuant to 26 U.S.C. § 6672 for failing to pay trust fund taxes for three closely held companies that he allegedly owned and operated: United America Holdings, Inc. ("United"), Boss Management Group, Inc. ("Boss"), and Nitti Family Enterprises, Inc. ("Planet Pizza").   In addition, the Government seeks to impose personal income tax liability on Wallis for the taxable years of 1998, 1999, 2000, and 2002.  For the following reasons, I will grant in part and deny in part the Government's motion, while denying the Defendant's motion.

## I.     Introduction

The United States' personal income tax system depends on employers withholding from employees' wages certain "trust fund taxes."[1]  Because of the importance of such trust fund taxes, Congress enacted 26 U.S.C. § 6672.  Under Section 6672, a "responsible person" in a position to pay the company's taxes will be personally liable for "trust fund taxes" that were not

---

[1] "The Internal Revenue Code requires employers to withhold social security and federal excise taxes from their employees' wages.  The employer holds these monies in trust for the United States." *Erwin v. United States*, 591 F.3d 313, 319 (4th Cir. 2010).

Case 6:14-cv-00005-NKM-RSB   Document 185   Filed 02/01/16   Page 1 of 22   Pageid#: 4041

paid, either intentionally or with reckless disregard or indifference to the risk that the taxes might not be paid. Relying on this provision, the Government seeks to hold Wallis personally liable for trust fund taxes concerning three companies: United, Boss, and Planet Pizza.

Wallis and Robert Nitti founded United in 1993. Dkt. 126–50 at 1. United supplied tote bags to trade organizations and grew to a nearly $2.5 million per year operation. *Id.* When United suffered a severe cash shortfall, it lost its credit terms with its suppliers thus causing it to become insolvent. *Id.* at 2–3. After shifting sales to Boss, Wallis set up United for chapter 11 bankruptcy. This left United with its debt, but protected United's sale operations and revenue from its' creditors. *See* Tr. Wallis at 51:24-52:9.[2] This plan succeeded as United earned $2,478,352 in 1999. Dkt. 126-49. However, United was not able to complete its planned chapter 11 reorganization because its tax debt was too great. Dkt. 27-6 at 50. Therefore, it converted to chapter 7 and ended on January 3, 2002.

In 2000, Wallis founded Boss and had United shift its marketing operation to Boss. Dkt. 126-36 at 7. While the signature of Boss's articles of incorporation are illegible, Wallis admitted to incorporating Boss and asked this Court to find that he was the incorporator and 100% owner in a 2005 lawsuit. *See Wallis v. Eastern Mfg. Corp.,* No. 7:05-cv-174, Compl. (W.D.Va. 2005). This Court agreed and found Wallis to be Boss' incorporator and owner. *See id.* at Dkt. 3. During the chapter 11 bankruptcy of United, Wallis tried to purchase Fabriko, a Wisconsin based competitor of United and Boss. *See* Dkt. 126–66, at 2–3. Wallis negotiated this purchase with at least one financier and the seller on behalf of both United and Boss. *Id.* Eventually, he effected the acquisition using a "clean" company of which he was president. *Id.* After missing out on the acquisition, Boss operated for just over a year before Wallis moved its sales and employees into

---
[2] Any reference to a transcript ("Tr.") refers to the deposition transcript of the individual listed.

2

another closely held company and let it "float." Tr. Brown 35:4–24, 39:8–19.

Wallis and Nitti co-owned Nitti Family Enterprises, also known as Planet Pizza. Dkt. 126–50 at 3. The company provided revenue for United. Wallis served as an officer of Planet Pizza and also helped make important corporate decisions, such as choosing its name. Dkt. 126–34 at 2; Tr. Shaw 51:23–52:5. On January 29, 2001, Planet Pizza filed for bankruptcy. Dkt. 126–39 at 3. In the creditors' meeting report, the Trustee of Planet Pizza noted that Planet Pizza, along with United, were seeking bankruptcy in part due to unpaid taxes. Dkt. 126–45.

On or about June 22, 1998, the Internal Revenue Service ("IRS" or "Service") assessed employment tax liabilities for the quarter ending March 31, 1998 against United. *See* Blunt Decl. at ¶ 24. The Service made additional employment tax assessments against United on December 21, 1998, and April 5, 1999, for various quarters. *See Id*. at ¶¶ 25, 26. The Service assessed employment tax liabilities against Planet Pizza on December 14, 1998, September 13, 1999, and February 7, 2000, for various quarters. *See Id.* at ¶¶ 17-20. Thereafter, the Service made additional assessments against United, Planet Pizza, and Boss. *See e.g.,* Dkt. 27-6, at 41. After each assessment, the Service alleges that they gave proper notice and demanded payment. Blunt Decl. ¶¶ 16, 23.

In addition to the trust fund taxes owed through these companies, the United States has also brought this action to recover personal income taxes from Wallis for the taxable years 1998, 1999, 2000, and 2002. *See* Dkt. 126 at 24; *see also* Dkts. 126–57, 126–58, 126–60, 126–63.

This case is now before me on cross-motions for summary judgment. Dkts. 116 and 126. Through hundreds of pages of briefing, exhibits, and deposition transcripts, each party argues that no genuine dispute of material fact exists and, therefore, summary judgment should be entered in its favor. For the reasons stated below, summary judgment will be granted in part for

the Government and denied in part.  Defendant's motion for summary judgment will be denied.

## II.     Legal Standard

### a.  Summary Judgment

Summary judgment is warranted if the Court concludes that no genuine issue of material fact exists for trial and that the moving party is entitled to judgment as a matter of law, based on the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits. *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013) (citing Fed. R. Civ. P. 56). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a genuine issue of material fact exists, a party may not rest upon his own mere allegations or denials. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather, the party must "proffer[] sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). To this end, a district court has an "affirmative obligation . . . to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### b.  Section 6672 Liability

Employers must withhold income and social security taxes from the wages paid to employees.  *See* 26 U.S.C. §§ 3402, 3102.  These "withholdings taxes are not simply a debt; they are part of the wages of the employee, held by the employer in trust for the government." *Gephart v. United States*, 818 F.2d 469, 472 (6th Cir. 1987); *see also Erwin v. United States*, 591

4

F.3d 313, 319–21 (4th Cir. 2010). In addition, these withholdings are "for the exclusive use of the Government and not to be used to pay the employer's business expenses, including salaries, or for any other purposes." *Erwin,* 591 F.3d at 319–21. Furthermore, the United States cannot be made "an unwilling partner in a floundering business" through a person making a decision "as a matter of sound business judgment" not to pay trust fund taxes. *Erwin*, 591 F.3d at 319–21. To ensure that this does not occur, federal law "assure[s] compliance by the employer of its obligation. . . to pay" trust fund taxes and allows for such employer to be held responsible for a decision not to withhold payment. *Id.* Personal liability of the failure to withhold taxes extends to any person who: (1) is deemed "responsible" for the collection and payment of trust fund taxes and (2) "willfully fail[s]" to ensure that the taxes are paid. *Id.* Under this inquiry, courts regard summary judgment as a "favored mechanism to secure the 'just, speedy, and inexpensive determination" of § 6672 liability. *Plett v. United States*, 185 F.3d 216, 223 (4th Cir. 1999).

In addition to the intricacies of § 6672 liability, certain overarching tax principles are relevant in the inquiry. First, tax assessments carry a presumption of correctness. *See Winstead v. United States*, 109 F.3d 1245, 1251 (4th Cir. 1987). This presumption is established when the Service shows that an assessment has been made against the taxpayer.[3] *See Higginbotham v. United States,* 556 F.2d 1173, 1175 (4th Cir. 1977). After the Government makes this *prima facie* showing, the taxpayer has the burden of proof of all elements. *See Erwin v. United States*, 591 F.3d 313, 319–21 (4th Cir. 2010). This burden requires that the taxpayer come forth with credible evidence. *Id.; see also United States v. Janis*, 428 U.S. 433, 440 (1976). Taxpayers cannot meet this burden with self-serving testimony or through failing to produce objective

---

[3] Wallis does not contend that assessments were not made. He only objects to certain alleged procedural violations discussed below.

proof.[4] *See Liddy v. Comm'r*, 808 F.2d 312, 316 (4th Cir. 1986); *see also Erwin*, 591 F.3d at 319–21; *Laney v. Comm'r*, 674 F.2d 342, 350 (5th Cir. 1982) (holding that a "taxpayer will always. . . give such [self-serving] testimony"); *DeLong v. United States*, 1997 U.S. Dist. LEXIS 4705, at *3–4 (W.D. Va. 1997) ("a taxpayer's uncorroborated evidence is insufficient to overcome the presumption of correctness"). Second, taxpayers are required to keep certain records. 26 U.S.C. §§ 6001, 6011, 6051(a) and (d). If the taxpayer fails to keep such records, he or she is not relieved of its burden. *See Erwin*, 591 F.3d at 319–21. In addition, "a taxpayer who has abandoned the advantage of mathematical precision by failing to keep adequate records cannot complain that the [Service's] assessment is based on estimates." *Jones v. Comm'r*, 903 F.2d 1301, 1303 (10th Cir. 1990).

### c. Personal Income Tax Liability

Income tax assessments, like 26 U.S.C. § 6672 assessments, represent the Service's determination that a taxpayer owes income tax. 26 U.S.C. §§ 6201, 6203. As with § 6672 assessments, once the United States introduces proof of the assessment, the burden of proof and persuasion shifts to the taxpayer. *See Janis,* 428 U.S. at 440; *Higginbotham*, 556 F.2d at 1175. The taxpayer must offer credible proof sufficient to persuade the Court that the tax assessments are erroneous. *See Compton*, 334 F.2d at 216; *Higginbotham*, 556 F.2d at 1176.[5]

### III. Personal Income Tax Assessments and Trust Fund Recovery Penalties ("TFRPs") are not time-barred.

---

[4] At the hearing, Wallis argued that conflicting testimony existed to warrant a denial of summary judgment. However, any conflict in the testimony (outside of Planet Pizza discussed later) results from these "self-serving" statements of Wallis, which is not enough to overcome his burden. For example, at the hearing, Wallis suggested that an unidentified bookkeeper, who ran his company into the ground, told him that he or she was paying taxes. However, this bookkeeper has not been identified nor has any affidavit or deposition been submitted on his or her behalf.

[5] As discussed below, Wallis only contends that the personal income tax assessments are time-barred.

6

### a. Personal Income Tax Assessment and TFRPs Ten Year Collection Limitation Period

The Government seeks Wallis to pay income taxes for the taxable years 1998, 1999, 2000, and 2002. The IRS may collect taxes by proceeding in court if the proceeding is begun within 10 years after the assessment of the tax. 26 U.S.C. § 6502(a)(1). Assessment of individual income taxes is made when the taxpayer files his Form 1040 income tax return, if the assessment was not previously made. 26 U.S.C. § 6502(a)(1). The ten-year collection statute of limitations for individual income taxes runs from the date the return is filed. *Automobile Club of Michigan v. Comm'r*, 353 U.S. 180, 186 (1957). Therefore, the dates relevant to the taxable years are as follows: 1998 is December 16, 2002; 1999 is December 9, 2002; 2000 is December 2, 2002; and 2002 is June 10, 2003.

Certain events toll the ten year limitation. For example, an offer-in-compromise tolls the ten-year collection limitation period for as long as the offer remains pending plus 30 day. *See* 26 U.S.C. 6503(a)(1); Treas. Reg. § 301.7122-1(g)(1), (i). A request for a collection due process hearing tolls the limitation period during the pendency of the request plus an additional 30 days. 26 U.S.C. § 6330(e)(1); Treas. Reg. § 301.6330-1(f), (g)(1). Bankruptcy tolls the limitation period for the duration of the case plus six months. See 26 U.S.C. § 6503(b); *see also* 11 U.S.C. § 362(a)(6) (staying collection of pre-petition liabilities).

In this case, Wallis was in bankruptcy between January 31, 2002, and May 21, 2002. Dkt. 126-1, at 13. This tolled the collection period for the 110 days of the bankruptcy plus six months. 26 U.S.C. § 6503(b); *see also* 11 U.S.C. § 362(a)(6); 26 U.S.C. § 6330(e)(1).

In addition to the bankruptcy, the collection period was also tolled when Wallis stopped collection and submitted offers-in-compromise. Dkt. 126-1, at 15. The first offer remained

pending between November 22, 2002, and May 16, 2003—which totals 175 days.; however only 165 days are contributed to the tolling event because the first income tax assessment did not occur until December 2, 2002. Dkt. 27-6, at 129–30. The second offer remained pending between November 24, 2004, and May 25, 2005—a total of 182 days. *Id.* These offers-in-compromise tolled the statute for the pendency of the offer plus an additional thirty days for each. 26 U.S.C. § 6503(a)(1). Between his offers-in-compromise, Wallis requested a collection due process hearing. Dkt. 126-1, at 15. It remained pending between December 11, 2003, and July 24, 2004—a total of 226 days. *Id.* The due process hearing tolled the collection period for its pendency plus an additional thirty days.[6] *See, e.g.*, 26 U.S.C. § 6330(e)(1).

Once these tolling events are calculated, it can be seen that the Government was not untimely in initiating suit. Under the normal collection period, the Government's timeframe would have expired on December 2, 2012—ten years after the earliest tax assessment. However, adding just the offers-in-compromise and due process hearing the government gains an additional 663 days (165+30+182+30+226+30). With these additional days, the Government's collection period would not have ended until September 26, 2014, not including the bankruptcy. This case was filed on January 16, 2014, well within the limitation period concerning the tolling events.

In addition, the same calculations establish that the TFRPs are also not time-barred. Once the bankruptcy (110 days) is added to the 663 day extension, the Government's ten-year period would not have ended until after the case was filed. Therefore, it complied with this

---

[6] I do not find the required prejudice for the failure of Wallis' attorney, Gary Bowman, from receiving the letter concerning this due process hearing as he was not prejudiced from defending himself. Furthermore, Mr. Bowman admits that he got his mail forwarded so he should have received the letter sent to his previous office address.

collection period by filing suit on January 16, 2014.[7]  Dkt. 1.

### b.  TFRPs Three Year Assessment Limitation Period

Section 6501's three-year statute of limitations applies to § 6672 assessments.  *See* 26U.S.C. §§ 6501(a), 6672(b)(3), 6671(a).  Importantly, however, this and other limitations periods must be construed strictly in the United States' favor.[8]  *See Bufferd v. Comm'r*, 506 U.S. 523, 527 (1993).  Additionally, certain events toll this period.  Mailing a Letter 1153 extends the three-year assessment period for 90 days.  *See* 26 U.S.C. § 6672(b)(3).  The three-year assessment period is also tolled during the pendency of a taxpayer's bankruptcy plus an additional 60 days. *See* 26 U.S.C. § 6503(h)(1); *see also* 11 U.S.C. § 362(a)(6) (staying assessment for pre-petition liabilities).  Lastly, the three-year assessment period begins only when the taxpayer files a return.  For Forms 941, the "deemed filed" date is the next April 15th.  *See* 26 U.S.C. § 6501(b)(2).  If the taxpayer never files a Form 941 return, the three-year period never starts running and "the tax may be assessed. . . *at any time*." 26 U.S.C. § 6501(b)(3), (c)(3) (emphasis added).  The Service's execution of a § 6020(b) return for the taxpayer "shall not start the running of the period of limitations." 26 U.S.C. § 6501(b)(3).

For the quarter ending March 31, 2000 relating to Planet Pizza and quarters ending March 31, 2000, June 30, 2000, September 30, 2000, and December 31, 2000 relating to United, no return was filed.  Therefore, no limitations period began to run and the Service can assess the taxes "at any time."  26 U.S.C. § 6501(b)(3), (c)(3).

Boss filed quarterly returns for the tax periods and on the dates as follows: June 30, 2002

---

[7] I also do not find any merit to Defendant's estoppel argument as it has failed to meet the high standard.  *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419 (1990); *see also Dawkins v. Witt*, 318 F.3d 606, 612 (4th Cir. 2003); *In re DePablo*, 45 F.3d 373, 377 (10th Cir. 1995).

[8] While this is an important consideration, the evidence establishes that the Government filed suit within every statute of limitation period after the tolling events are calculated without such strict construction.

on July 31, 2003; September 30, 2002 on October 30, 2002; and December 31, 2002 on January 31, 2003.  *See e.g.,* 2d. Blunt Decl. at ¶¶ 14-15; *see also* Dkt. 138-6 at 7, 9, 11.  Of these filings, the earliest occurred on July 31, 2002.  Pursuant to § 6501(b)(2), the return was "deemed filed" on April 15, 2003, meaning the Service had an April 15, 2006 deadline to file suit.  Revenue Officer Pinchback sent the Letter 1153 on April 12, 2006, tolling the date for an additional 90 days.  *See* 26 U.S.C. § 6672(b)(3); Dkt. 126-69.  Wallis' bankruptcy also tolled the assessment period for another 170 days.  *See* 26 U.S.C. § 6503(h)(1); 11 U.S.C. § 362(a)(6).  Accordingly, the Service had until well after July 6, 2006 to make its § 6672 assessment against Wallis, which it successfully accomplished.  Dkts. 86, 126-23 at 2, 126-24 at 2, 126-25 at 2.

### IV.     The Service provided proper notice under 26 U.S.C. § 6672(b)(1)

Under 26 U.S.C. § 6672(b)(1), the Service must give a responsible person notice that he may be subject to a § 6672 assessment.  *See* 26 U.S.C. § 6672(b).  The Service accomplishes this notice requirement through mailing a Letter 1153 to the taxpayer's last known address.[9]  *See Smith v. Comm'r*, T.C. Memo 2015-60, *16 (Mar. 26, 2015); *Lepore v. Comm'r*, T.C. Memo 2013-135, *6 (May 30, 2013) (same); *Lindstrom v. Comm'r*, 94 T.C.M. (CCH) 212 (T.C. 2007). Proof of the Service's normal mailing practices corroborated by testimony or documentary evidence satisfies § 6672(b).  *See*, *e.g*., *Mason v. Comm'r*, 132 T.C. 301, 318 (T.C. 2009); *Coleman v. Comm'r*, 94 T.C. 82, 90 (T.C. 1990); *Magazine v. Comm'r*, 89 T.C. 321 (1987)); *see also* Fed. R. Evid. 406.

The Service meets its duties by sending notice to the taxpayer's "last known address," a term of art defined in Treasury Regulation § 301.6212-2(a) as:  the  address  that

---

[9] The presumption of regularity suggests that Form 2751 were included with the Letter 1153.  However, even assuming *arguendo* that the Form 2751 was not included, proper notice is accomplished through the Letter 1153.

appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the Internal Revenue Service (IRS) is given clear and concise notification of a different address. *See e.g., Bullard v. United States*, 486 F. Supp. 2d 512, 516 (D. Md. 2007); *Mason*, 132 T.C. at 318. Further information on what constitutes clear and concise notification of a different address and a properly processed Federal tax return can be found in Rev. Proc. 90-18 (1990-1 C.B. 491) or in procedures subsequently prescribed by the Commissioner. Treas. Reg. § 301.6212-2(a).

Prior to February 20, 2001, taxpayers could not change their address without submitting a "clear and concise" *written* statement. *See id.*; *see also* Rev. Proc. 90-18. That meant submitting a signed tax return with a new address, *see* Rev. Proc. 90-18, *12, or providing a clear and concise written statement that included the old address and specifically requested that the Service use a new address. *Id.* On February 20, 2001, the Service published Rev. Proc. 2001-18, and afterwards taxpayers could change their address using a written notifications or by giving the Service "clear and concise oral notification." *See* Rev. Proc. 2001-18, *14. For oral notification, the taxpayer had to state his old address as well as specifically request that the Service change the taxpayer's old address to the new address. *See id.* Importantly, however, for either notification, the Service had a "45-day processing period" to update its records. *See id.* at *11.

Wallis contends that the Service failed to give him the notice that § 6672(b) requires. Dkt. 116 at 12. Specifically, Wallis argues that he never received a Form 2751. However, this form is not required for proper notice. *See* 26 U.S.C. § 6672(b). The Service satisfies § 6672(b) by mailing a Letter 1153 to the last known address. Revenue Officer Bliss stated that her normal practice after her manager approved her investigation was to send a Letter 1153 and Form 2751, and in fact, she sent both to Wallis on February 21, 2001 for United and Planet Pizza. Bliss

11

Decl. at ¶¶ 6, 10; *see also* Dkts. 126-41, 126-42, 126-65. Revenue Officer Gary sent both a Letter 1153 and Form 2751 to Wallis on April 14, 2004 for United and on August 24, 2004 for Planet Pizza. Gary Decl. at ¶¶ 6-7; *see also* Dkt. 126-61. Revenue Officer Pinchback's normal practice was to send a Letter 1153 and Form 2751, and in fact she sent both to Wallis on April 12, 2006. Pinchback Decl. at ¶¶6, 7; *see also* Dkts. 126-65, 126-69. This provides ample proof of the Service's normal mailing practices corroborated by testimony to satisfy § 6672(b). *See*, *e.g.*, *Mason v. Comm'r*, 132 T.C. 301, 318 (T.C. 2009); *Coleman v. Comm'r*, 94 T.C. 82, 90 (T.C. 1990); *Magazine v. Comm'r*, 89 T.C. 321 (1987)); *see also* Fed. R. Evid. 406.

The only other contention that Wallis raises is that it was not sent to his "last known address." First, he argues that the address used by the Service was incorrect; however, he used the same address for his dealings with banks, bank statements, and everyone he paid through check. Dkt. 96-6 at 1-13. In addition, this address satisfied the formal requirements of Wallis' "last known address." Under the regulations, a "last known address" is either the address on Wallis' last tax return or a "new address" identified by him in a "clear and concise" statement, where he specifically requested that the Service update his address. *See* Treas. Reg. §301.6212-2(a); Rev. Proc. 90-18; and Rev. Proc. 2001-18. Wallis did neither of these actions to change his "last known address." Wallis waited until 2002 to file his 1998, 1999, and 2000 returns. Dkt. 116 at 9. Furthermore, Wallis offers no evidence to suggest that he gave a "clear and concise" request to change his address to the Service.

## V.     The Service's § 6020(b) are not "naked"

The Service may prepare a return and determine the tax due even if the taxpayer filed no return. *See* 26 U.S.C. § 6020(b); *see also McHan v. Comm'r*, 558 F.3d 326, 332 (4th Cir. 2009)

(citing *Cebollero v. Comm'r*, 967 F.2d 986, 990 (4th Cir.1992)). The Service may use any reasonable means, including the revenue officer's own knowledge or any other information. *See* Treas. Reg. § 301.6020-1(b). Assessments based on § 6020(b) "'often rest on hearsay or other inadmissible evidence,'" and the Court may uphold the assessment even without examining the original information relied on by the Service. *See Cebollero*, 967 F.2d at 993. Once made by any reasonable means, the § 6020(b) returns are "*prima facie* good and sufficient," and the taxpayer has "the burden of proving it wrong." *Cebollero*, 967 F.2d at 990.

A taxpayer may prove an assessment wrong by showing an assessment to be "naked," meaning "utterly without foundation" thus shifting the burden to the United States. *United States v. Janis*, 428 U.S. 433, 442 (1976). To prevail on this theory. the taxpayer must show that no proof links the taxpayer to the tax-generating activity. *See*, *e.g.*, *United States v. Walton*, 1997 U.S. Dist. LEXIS 13793, *6 (W.D.N.C. Aug. 22, 1997). Importantly, however, any *minimal* factual link will clothe the assessment. *See Williams v. Comm'r*, 999 F.2d 760, 764-766 (4th Cir. 1993). "Once the minimal evidentiary showing is made . . . the normal burden of proof rules apply." *Id.* In practical terms, that means § 6020(b) returns prepared by *any* reasonable means provide the *minimal* factual foundation needed to clothe an assessment. *See id.*

Wallis contends that the assessments made were naked. Wallis, however, fails to provide specific evidence of these allegations. *See e.g., Winstead v. United States*, 109 F.3d 989, 993 (4th Cir. 1997) (holding the taxpayer "pointed to no evidence that the IRS's assessment was incorrect, and his conclusory allegations are not sufficient to create a factual dispute"). The only evidence that Wallis relies upon, after the reopening of discovery, is the Virginia Employment Commission ("VEC") Status Inquiry Screen which allegedly shows the taxable wages paid to

13

employees. However, this evidence only bolsters the IRS's § 6202(b) estimates.[10] For example, the total wages paid by United in 2001 equaled $295,726.41, while the § 6020(b) return estimated total wages as $298,397.28. Dkt. 138-8 at 3. In addition, the difference between the returns for Boss for the quarters ending March 31, 2001 and September 30, 2001 and the VEC records favor Wallis over $2,000. Dkt. 138-10 at 5. Therefore, Wallis has failed to meet his burden. *Winstead*, 109 F.3d at 993. Furthermore, there is ample evidence to conclude that Wallis was linked to the tax-generating activity of each company, which "clothe[s] the assessment." *See Williams v. Comm'r*, 999 F.2d 760, 764-766 (4th Cir. 1993).

Even assuming, *arguendo*, that Wallis' evidence did provide a concrete determination that the Service overestimated the amount of his § 6672 liability, such overestimation would be the result of his own actions as he allowed important evidence to be destroyed. *Kobus v. United States*, 103 Fed. Cl. 575, 598 (Fed. Cl. 2012). In *Kobus*, the Federal Court of Claims recognized the possibility that the assessed amounts "are higher than the actual amounts of unpaid withholding taxes." *Id.* Although the Court determined that the defendant failed to meet his burden just as Wallis has failed to do in this case, the Court also noted that the United States had "good cause" to find that the responsible person had spoliated the evidence. *Id.* In this case, Wallis admits that important pieces of evidence "were thrown away by him." Dkt. 76-2 at 35.

Therefore, there is no evidence that the Service's § 6020(b) estimates were "utterly without foundation," while ample proof links Wallis to the tax-generating activity of the companies. *United States v. Janis*, 428 U.S. 433, 442 (1976); *United States v. Walton*, 1997 U.S.

---

[10] As discussed above, the Service's estimates are presumed to be correct as long as reasonable means were used to calculate such estimate. *See* 26 U.S.C. § 6020(b); *Cebollero v. Comm'r*, 967 F.2d 986, 990 (4th Cir. 1992). While the Service has supplied ample evidence to satisfy this "reasonable means" inquiry, s*ee e.g.,* Decl. Gary at ¶5; Decl. Pinchback at ¶¶ 5-8.; Dec. Blunt ¶¶ 6-23. I will entertain Wallis' argument comparing the § 6020(B) estimates to the numbers found on the VES website when discovery was reopened. These numbers, as discussed, provide backing that the § 6020 estimates were completed accurately with the resources available.

14

Dist. LEXIS 13793, *6 (W.D.N.C. Aug. 22, 1997). Furthermore, Wallis, "who has abandoned the advantage of mathematical precision by failing to keep adequate records[,] cannot complain that the [Service's] assessment is based on estimates." *Jones v. Comm'r*, 903 F.2d 1301, 1303 (10th Cir. 1990).

### VI. Wallis fails to provide sufficient evidence to rebut the presumption for §6672 Liability for United and Boss

In order to establish personal liability for a corporation's trust fund taxes, two elements must be shown: (1) the person is "responsible for the collection and payment of the trust fund taxes and (2) the person "willfully fail[ed]" to see that the taxes are paid. *Erwin*, 591 F.3d at 319. Once the Government assesses a taxpayer for this liability, as done here, the taxpayer has the burden of proof for both elements of § 6672 liability. *Id.*

Under the responsible person inquiry, more than one person may be deemed responsible. "The term 'responsible person' is broad and may include many individuals." *O'Connor v. United States,* 956 F.2d 48, 50 (4th Cir. 1992). Courts evaluate if a person is a responsible person under § 6672 by elevating substance over form and determine whether "the person had the 'effective power' to pay taxes." *Plett,* 185 F.3d at 219. Effective power is actual authority or significant ability to influence the finances, payment of taxes, or management decisions. *Erwin*, 591 F.3d at 320. In addition, the Fourth Circuit has developed a list of non-exhaustive factors to determine whether effective power has been established. These factors include whether the individual: (1) served as an officer or director of the company; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the corporation's day to day management; (5) had the ability to hire and fire employees; and (6) possessed the power to write checks. *Erwin*, 591 F.3d at 319–21 (*citing Plett*, 185 F.3d at 219;

15

*O'Connor*, 956 F.2d at 51). These factors are evaluated in light of the "totality of the circumstances." *Id.*

Under the willfulness inquiry, courts find that an individual willfully failed to pay trust fund taxes if the taxpayer: (1) had knowledge of nonpayment of the taxes or (2) recklessly disregarded or was indifferent to the risk that tax payments might not be made. *Id.* (*citing Plett*, 185 F.3d at 219); *Turpin v. United States*, 970 F.2d 1344, 13447 (4th Cir. 1992). An example of willfulness occurs when the taxpayer knows of the duty to pay trust fund taxes but chooses to pay other creditors. *Pomponio*, 635 F.2d at 398, n.5. "Any payment to other creditors, including the payment of net wages to employees, with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes." *Greenberg v. United States*, 46 F.3d 239, 244 (3d. Cir. 1994). In addition, willfulness can be established through proof that a responsible person (1) knew or should have known that there was a grave risk that taxes were not being paid; (2) could have found out by inquiry; and (3) made no such inquiry. *See, e.g., Thompsen*, 887 F.2d at 18; *Vespe*, 868 F.2d at 1335; *Wright*, 809 F.2d at 427.

### a.  United

Although the Government has no burden of producing any evidence, it has produced ample evidence to prove that Wallis was (1) a responsible person and (2) willfully failed to pay trust fund taxes for United. *Erwin*, 591 F.3d at 319. Meanwhile, Wallis has relied upon self-serving statements and no objective evidence. *See Liddy v. Comm'r*, 808 F.2d 312, 316 (4th Cir. 1986); *see also Erwin*, 591 F.3d at 319–21; *Laney v. Comm'r*, 674 F.2d 342, 350 (5th Cir. 1982) (holding that a "taxpayer will always. . . give such [self-serving] testimony"); *DeLong v. United States*, 1997 U.S. Dist. LEXIS 4705, at *3–4 (W.D. Va. 1997) ("a taxpayer's uncorroborated

16

evidence is insufficient to overcome the presumption of correctness").

Specifically, the Government has provided evidence that Wallis "had the effective power to pay taxes." *Plett,* 185 F.3d at 219. Using the Fourth Circuit's factors, Wallis was the founder of United. Dkt. 126-50 at 1. Wallis also controlled the company's payroll, determined what creditors were to be paid, participated in the corporation's day-to-day management, had the ability to make personnel decisions, and wrote checks. *Erwin*, 591 F.3d at 319–21. Specifically, Nuckols, who worked for United, testified that part of her regular duties was to prepare reports that specified the gross and net wages as well as showed what taxes were due. Tr. Nuckols at 12:24-13:10; 13:14-13:20. Nuckols stated that she gave these reports to both Nitti and Wallis depending on who was in the office. *Id.* at 19:3-10. In addition to Nuckols, Patty Beatty, another United bookkeeper hired by Wallis, also stated that she prepared similar reports. Tr. Beatty at 12:23-14:3; 13:23-14:19; 41:22-42:7; 42:5-44:10. She further noted that she delivered these reports to Wallis and Wallis understood what taxes were due and owing. *Id.* at 68:9-69:11. Furthermore, Beatty stated that Wallis had access to checkbooks and could sign checks. *Id.* at 13:23-14:3; 24:15-25:1; 40:7-41:6. Additionally, Wallis also admits that he controlled United at all relevant times and admitted that he was responsible for hiring and firing at United. Dkt. 76-6 at 5, 12. He even signed important documents for United and made the important business decision to shift United's sale operations and revenue from United to Boss.[11] Dkts. 126-35, 126-40, 126-46, 126-54, 126-55, 126-56; Tr. Wallis at 51:24-52:9.

Therefore, the evidence shows that Wallis was a responsible person for United.

The evidence also proves that Wallis willfully failed to pay trust fund taxes. First, Nuckols and Beatty both prepared reports that specified the taxes that were due. Tr. Nuckols at

---

[11] This "responsible person" status did not change when United entered chapter 11 reorganization.

17

12:24-13:10; 13:14-13:20; Tr. Beatty at 12:23-14:3; 13:23-14:19; 41:22-42:7; 42:5-44:10. Beatty further stated that Wallis regularly directed which of the companies' bills were or were not paid. Tr. Beatty at 31:1-11; 32:10-33:1. She also explained that Wallis and Nitti held regular meetings to decide which bills would be paid, not paid, or delayed. *Id.* at 82:10-83:16. Therefore, Wallis knew that taxes were due and, at minimum, was recklessly indifferent that taxes might not be paid at all relevant times, including the pendency of the chapter 11 reorganization. *Erwin*, 591 F.3d at 319–21; *see also Thosteson v. United States,* 331 F.3d 1294, 1300–01 (stating that a responsible person has a duty to use all current and future unencumbered funds available to the corporation to pay those taxes back); *United States v. Kim,* 111 F.3d 1351, 1357 (7th Cir. 1997) (same); *Honey v. United States*, 963 F.2d 1083, 1089 (8th Cir. 1992) (same); *Mazo v. United States,* 591 F.2d 1151, 1157 (same).

Therefore, the "payment to other creditors. . . with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes." *Greenberg*, 46 F.3d at 244.

### b. Boss Management

Similarly, the Government has produced ample evidence to prove that Wallis was (1) a responsible person and (2) willfully failed to pay trust fund taxes for Boss. *Erwin*, 591 F.3d at 319. Meanwhile, Wallis, once again, has relied upon self-serving statements and no objective evidence. *See Liddy v. Comm'r*, 808 F.2d 312, 316 (4th Cir. 1986); *see also Erwin*, 591 F.3d at 319–21; *Laney v. Comm'r*, 674 F.2d 342, 350 (5th Cir. 1982) (holding that a "taxpayer will always. . . give such [self-serving] testimony"); *DeLong v. United States*, 1997 U.S. Dist. LEXIS 4705, at *3–4 (W.D. Va. 1997) ("a taxpayer's uncorroborated evidence is insufficient to

18

overcome the presumption of correctness").

Using the Fourth Circuit factors, the Government has established that Wallis "had the effective power to pay taxes." *Plett,* 185 F.3d at 219. Specifically, Wallis was the founder of Boss, controlled the company's payroll, determined which creditors to pay, and participated in the day-to-day management, as discussed below. Wallis also had the ability to hire and fire employees, possessed the power to write checks, and set wages for himself and other Boss employees. Tr. Nuckols 13:23-25; Tr. Shaw 14:6-15:17, 23:25-24:6, 28:22-29:19; Tr. Beatty 17:10-18:3, 40:21-41:6, 36:18-22, 66:12-67:7, 66:12-67:7; Tr. Rozar 13:13-14:8, 14:16-15:3; Tr. Brown 13:13-18, 25:22-24, 20:7-21:3, 73:21-74:21; Tr. Pugh 17:4-18:19.

Lauren Rozar,[12] a bookkeeper hired by Wallis for Boss, noted that she prepared reports for Wallis showing which taxes were due. Tr. Rozar at 15:4-16; 47:16-49:25. She also stated that Wallis determined which creditors were to be paid. *Id* at 35:6-9 ("if we owed any money on it I would tell Bill and he either paid it or didn't pay it"). Brown also stated that Wallis controlled whether bills got paid, and the employees at Boss answered to Wallis. Tr. Brown 21:17-23:8. In addition to controlling the payroll, creditor payments, and hiring of employees, Wallis also participated in the day-to-day management at Boss. Wallis dealt directly with Boss' vendors and suppliers. *Id.* at 26:19-27:25. Wallis also attempted to purchase one of Boss' competitors on behalf of Boss. Dkt. 126-66 at 2–3. Furthermore, Boss decided to move the sales and employees into another closely held business and let it "float." Tr. Brown 35:4-24; 39:8-19.

---

[12] Lauren Rozar and Lauren Sarwas is the same individual. Tr. Rozar at 1:14-15 ("Lauren Sarwas a/k/a Lauren Rozar"). I have used Lauren Rozar to avoid any confusion.

19

To rebut this evidence, Wallis contends that Pugh was the "responsible person" of Boss.[13] Although Pugh and other Boss employees directly contest Wallis' argument, it is irrelevant. Tr. Pugh 49:2-49:6; 33:5; 47:24-48:9; Tr. Beatty 28:12-25 (stating that Pugh was a "babysitter" for Wallis). At best, Wallis' suggestions argue that Pugh could be considered a "responsible person;" however, the Fourth Circuit has made clear that a responsible person is a broad term and could include many individual. *O'Connor*, 956 F.2d at 50. Therefore, Wallis' contention that Pugh could be considered a responsible person has no bearing on the inquiry that he also is a responsible person.

Likewise, the Government has also established that Wallis willfully failed to pay trust fund taxes for Boss. Both Rozar and Brown stated that Wallis knew that taxes were due and made the decision which bills to pay, specifically that he chose to pay some bills over others. Tr. Rozar 15:4-16; 47:16-49:25; Tr. Brown 57:4-57:14. Rozar also stated that she remembered doing a Form 941 showing Wallis what they owed and he acknowledged this, but failed to pay it. Tr. Rozar 35: 6-9. This evidence proves that Wallis knew that taxes were due and, at minimum, was recklessly indifferent that taxes might not be paid. *Erwin*, 591 F.3d at 319–21; *see also Thosteson v. United States,* 331 F.3d 1294, 1300–01 (stating that a responsible person has a duty to use all current and future unencumbered funds available to the corporation to pay those taxes back); *United States v. Kim,* 111 F.3d 1351, 1357 (7th Cir. 1997) (same); *Honey v. United States*, 963 F.2d 1083, 1089 (8th Cir. 1992) (same); *Mazo v. United States,* 591 F.2d 1151, 1157 (same).

Therefore, the "payment to other creditors. . . with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes." *Greenberg*, 46

---

[13] Wallis suggests that he was not a responsible person for Boss prior to June 10, 2002. Dkt. 137 at 8. However, the evidence shows that Wallis was a responsible person for Boss from its inception, as he was its incorporator. *Wallis v. Eastern Mfg. Corp. et al.,* No 7:05-cv-174, Dkt. 3 (W.D.Va. 2005).

20

F.3d at 244.

### c. Planet Pizza

While the Government provided ample evidence for United and Boss, the evidence for Planet Pizza is sparser.[14] Specifically, the Government provided that Wallis co-founded, co-owned, was an officer, and participated in key decisions of Planet Pizza. Dkt. 126-50 at 3 (co-founder); Tr. Nitti at 25:17-27:2 (co-owner); Dkt 126-34 at 2 (officer); Tr. Shaw 51:23-52:5 (Wallis helped name the company). However, this evidence does not clearly provide that Wallis was a "responsible person" at the relevant times at question. *Erwin*, 591 F.3d at 319. Specifically, the Government's brief only states that Wallis served as its officer for "some period of time" rather than pointing to the exact timeframe at issue. Dkt. 126-1 at 21. Furthermore, other individual's testimony did not directly implicated Planet Pizza. *See e.g.,* Tr. Beatty 13:23-14:3; 24:15-25:1; 40:7-41:6 (Wallis could at least sign checks for United but never stated he could for Planet Pizza); Dkt. 126-1 ("[F]or at least United and Boss, Wallis controlled his closely held companies' checkbooks, decided which bills got paid, and repeatedly caused his companies to pay other creditors while the taxes remained unpaid.").

Furthermore, Wallis has put forth sufficient evidence to raise a genuine issue of material fact whether Wallis was a "responsible person" for Planet Pizza. Nitti only deemed Wallis a "Secretary Treasurer" on the 1997 Annual report. Also, Nitti suggests that Wallis: (1) had nothing to do with the company's payroll, (2) did not determine which creditors to pay and when to pay them, (3) did not participate in the corporation's day-to-day management, (4) did not have

---

[14] While I understand that the burden does not require the Government to submit evidence, the Government seemingly recognizes that its evidence coupled with Wallis' evidence suggests that summary judgment is not appropriate for Planet Pizza. Dkt 139 at 1 ("[T]he Court should find at a minimum that Wallis willfully failed to pay over taxes for at least United American Holdings, Inc. and Boss Management Group, Inc.").

the ability to hire and fire employees, and (5) did not have the power to write checks. Nitti Dec. ¶2.

This is enough to raise a genuine issue of material fact that Wallis, although listed as a Secretary Treasurer, lacked significant control over the disbursement of funds, had no access to Planet Pizza's checking account, and did not have a role in Planet Pizza's payroll or lack of tax payments.[15] *Abel v. United States*, 200 B.R. 816 (Bankr. E.D. Pa. 1996); *Sherwood v. United States*, 246 F. Supp. 502 (E.D.N.Y. 1965). Therefore, summary judgment will be denied with respect to trust fund taxes due for Planet Pizza.

## VII. Conclusion

As discussed above, summary judgment for the Government will be granted in part and denied in part. Specifically, the evidence proves that Wallis was a responsible person who willfully failed to pay taxes for United and Boss. However, the evidence is not as strong for Planet Pizza, which the Government recognizes. *Supra* footnote 14. Therefore, there is a genuine dispute of material fact whether Wallis was a "responsible person" for Planet Pizza during the relevant timeframe. The Government's motion will also be granted as it concerns personal income tax liability. Defendant's motion for summary judgment is denied.

Entered this __1st__ day of February, 2016.

_Norman K Moon_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[15] Due to this genuine dispute, I will not consider whether Wallis willfully failed to pay the trust funds taxes for Planet Pizza as the inquiry overlaps with whether he was a responsible person (i.e., did Wallis have the ability to pay the taxes or did Wallis choose to pay one creditor over the other). *Erwin*, 591 F.3d at 319–21 (*citing Plett*, 185 F.3d at 219; *O'Connor*, 956 F.2d at 51).