## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 6:14-cv-00005** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Hon. Robert S. Ballou** |
| **WILLIAM L. WALLIS,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The district court granted summary judgment in favor of Plaintiff United States finding

Defendant William L. Wallis ("Wallis") liable for certain unpaid income and trust fund taxes

assessed by the Internal Revenue Service (the "Service"). See Dkt. No. 185.  The district court

referred to me the calculation of Wallis's tax liability and the United States' motion for entry of

final judgment. Dkt. No. 198.[1]  I have carefully considered the record, the legal arguments

submitted, and the applicable law, and **RECOMMEND** that Plaintiff's motion for dismissal of

claims against Planet Pizza and entry of final judgment (Dkt. No. 198) be **GRANTED** in its

entirety and further that the district court enter **JUDGMENT** against Wallis for unpaid personal

income taxes and trust fund taxes for United American Holdings, Inc. ("United") and Boss

Management Group ("Boss"), as set forth in this report and recommendation.

## Background

The facts as to Wallis's tax liability are fully set forth in the district court's February 1,

2016 Memorandum Opinion and Order (Dkt. Nos. 185 and 186), granting summary judgment

---

[1] The district court denied Plaintiff's motion for summary judgment as to Planet Pizza. See Dkt. No. 185. Thereafter, Plaintiff moved to dismiss its claims at paragraph 4.C of the Amended Complaint (Dkt. No. 86) related to Nitti Family Enterprises, Inc., a/k/a Planet Pizza. See Dkt. No. 198.

against Wallis, in part, and finding him liable for failure to pay proper trust fund taxes under 26

U.S.C. § 6672 as to United for the tax periods (quarter ending dates): 3/31/1999, 6/30/1999,

9/30/1999, 3/31/2000, 6/30/2000, 9/30/2000, 12/31/2000, 3/31/2001, 6/30/2001, and 9/30/2001

and for Boss for tax periods (quarter ending dates): 12/31/2000, 3/31/2001, 9/30/2001,

6/30/2002, 9/30/2002 and 12/31/2002. Dkt. No. 186, p. 1. The district court also found Wallis

liable for failure to pay personal income tax for the taxable years 1998, 1999, 2000 and 2002. Id.

The United States is entitled to judgment upon calculation of the amounts due for the tax quarters

and years which the district court has found Wallis liable. The government seeks final judgment

amounts against Wallis, as set forth below:

(1) Personal income tax (Form 1040):

| Tax Period | Final Judgment Amount |
|---|---|
| 1998 | $17,341.60 |
| 1999 | $15,098.88 |
| 2000 | $13,700.36 |
| 2002 | $10,445.64 |
| Total: | $56,586.48 |

(2) United American Holdings, Inc. quarterly employee withholding tax:

| Tax Period | Final Judgment Amount |
| --- | --- |
| 03/31/1999 | $19,443.81 |
| 06/30/1999 | $21,448.24 |
| 09/30/1999 | $21,298.73 |
| 03/31/2000 | $18,096.06 |
| 06/30/2000 | $52,887.56 |
| 09/30/2000 | $39,858.94 |
| 12/31/2000 | $47,047.05 |
| 03/31/2001 | $37,047.05 |
| 06/30/2001 | $44,453.55 |
| 09/30/2001 | $41,120.10 |
| Total: | $342,701.09 |

(3) Boss Management Group, Inc. quarterly employee withholding tax:

| Tax Period | Final Judgment Amount |
| --- | --- |
| 12/31/2000 | $5,442.64 |
| 03/31/2001 | $10,843.29 |
| 09/30/2001 | $10,843.29 |
| 06/30/2002 | $3,884.34 |
| 09/30/2002 | $1,091.29 |
| 12/31/2002 | $3,325.98 |
| Total: | $35,430.83 |

Additionally, the government seeks statutory interest, penalties, and costs as of July 25, 2016, which have accrued and continue accruing pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c). See Dkt. No. 226-3.

## Applicable Law

In an action for unpaid tax liabilities, tax assessments carry a presumption of correctness, and the government can establish a *prima facie* case by showing that an assessment has been made against a defendant. See United States v. Fior D'Italia, 536 U.S. 238, 242 (2002). The government may demonstrate that it has properly assessed a tax liability by placing into evidence

3

a Certificate of Assessments and Payments. See United States v. Pomponio, 635 F.2d 293, 296 (4th Cir. 1980).  These certificates are presumed correct unless the defendant proves otherwise. See United States v. Janis, 428 U.S. 433, 440 (1976); see also Pomponio, 635 F.2d at 296.

Once the government makes its prima facie case, the burden shifts to the tax payer to "establish a genuine issue of material fact concerning the validity of the assessments." U.S. v. Register, 717 F. Supp. 2d 517, 523 (E.D. Va. 2010).  The benefit of the presumption of correctness of the Certificates of Assessment disappears upon the taxpayer providing "substantial evidence" that the government's assessment is wrong. Pomponio, 635 F.2d at 297 n.4.  In fact, the taxpayer must prove by a preponderance of the evidence that the government assessments are erroneous, and if so, the burden shifts back to the government to prove the amount the taxpayer actually owes. Higginbotham v. United States, 556 F.2d 1173, 1175 (4th Cir. 1977).  To meet this burden, the defendant "cannot merely rely upon his 'tax returns, uncorroborated oral testimony, or self-serving statements.'" United States v. Short, No. 1:13-CV-899, 2015 WL 9592521, at *2–3 (M.D.N.C. Dec. 31, 2015) (internal quotation marks omitted).  Tax payers are required to keep certain records as set out under 26 U.S.C. §§ 6001, 6011, 6051(a) and (d), and are not relieved of the burden of proving the amount owed by failing to keep such records. See Erwin v. United States, 591 F.3d 313, 319–21 (4th Cir. 2010).  Further, "a taxpayer who has abandoned the advantage of mathematical precision by failing to keep adequate records cannot complain that the [Service's] assessment is based on estimates." Jones v. Comm'r, 903 F.2d 1301, 1303 (10th Cir. 1990).

### Analysis

The United States relies upon the declarations of Kenneth Blunt ("Blunt"), a Revenue Office Advisor for the Service, to establish a prima facie case of Wallis's income tax and § 6672

4

liabilities. <u>See</u> Dkt. No. 198-2; Dkt. No. 226-1.  Blunt's most recent declaration sets forth

Wallis's unpaid balance for these liabilities as of October 24, 2016. Dkt. No. 226-1.  Blunt's

declaration sufficiently sets out a prima facie case of Wallis's tax liabilities, and the burden shifts

to Wallis to establish that the tax assessments are erroneous.  Wallis provides no evidence

outside of his self-serving statements to meet this burden.  That is, Wallis has provided no

evidence that he has paid some or all of the taxes owed or that the government has improperly or

incorrectly calculated the tax assessments.

Wallis contends that a certain amount of the § 6672 tax assessment are no longer due

because the Service filed with the court clerks in Bedford County, Virginia and Augusta, Georgia

two "Certificate[s] of Release of Federal Tax Lien[s]" dated August 21, 2016. <u>See</u> Dkt. No. 214-

1, p. 1–2. Wallis asserts that these certificates release the tax liability under 26 U.S.C. § 6325.

Dkt. No. 218, p. 1–2.  The Service has explained that it filed the certificates of release

inadvertently, and have re-filed the tax liens. <u>See</u> Dkt. No. 217, p. 3; Dkt. No. 226, p. 6; Dkt. No

226-1, p. 4.  Furthermore, the United States correctly asserts that the burden still squarely rests

on Wallis to demonstrate he actually paid these taxes.

Indeed, Wallis's liability for his tax debts remains until the debts are paid, and his

reliance on 26 U.S.C. § 6325(a) lacks merit. The mere filing of a certificate of release of a tax

lien is not evidence that the tax has been paid. "It is well settled that although a certificate of tax

lien release is conclusive that the *lien* is extinguished, it is not conclusive that the *tax liability* is

extinguished." <u>Boyer v. C.I.R.</u>, 86 T.C.M. (CCH) 615 (T.C. 2003) (internal citations omitted);

<u>see</u> <u>also</u> <u>United States v. Springer</u>, No. 08-CV-278-TCK-PJC, 2010 WL 830614, at *9–10 (N.D.

Okla. Mar. 3, 2010), <u>aff'd</u>, 427 F. App'x 650 (10th Cir. 2011) (stating "it [a filed Certificate of

Release] does not establish that the underlying tax liability has been paid.").  The plain language

of 26 U.S.C. § 6325(f)(1)(A), 26 C.F.R. § 301.6325-1(a)(1) and the Certificate of Release of Federal Tax Lien "clearly shows that the release extinguishes the tax lien, not the tax liability." Boyer v. C.I.R., 86 T.C.M. (CCH) 615 (T.C. 2003). "The underlying tax liability is not extinguished when a lien is released. In fact, the tax liability remains until the tax is paid in full or the statutory period for collection expires." Id. At the hearing, Wallis stated he did not know whether the taxes listed on the certificates have been paid "because he pays taxes all of the time." Dkt. No. 217, p. 5. Wallis has provided no documentation outside of these improperly filed certificates and his self-serving statements to prove that he has satisfied the underlying tax liabilities. He has failed to show that he does not owe the amount claimed. Further, the Service has provided evidence that the inadvertently filed releases have been revoked, which reinstates the priority of the lien against other creditors. See 26 U.S.C. § 6325(f)(2).

Wallis attempts to shift the burden of proving the amount of tax due back to the United States under 26 U.S.C. § 7491(a)(1), claiming that the certificates of release establish credible evidence regarding the amount owed. Indeed, § 7491(a)(1) provides that wherever a taxpayer establishes credible evidence regarding a factual issue, the Service retains the burden of proof on that issue. See 26 U.S.C. § 7491(a)(1). This section only applies though where a taxpayer has maintained all records required, and Wallis has not, which prevents him from taking advantage of the burden shifting requirements under § 7491. See 26 U.S.C. § 7491(a)(2)(B). This section also does not apply to taxes imposed under Subtitle F, which are at issue here for United and Boss. 26 U.S.C. § 7491(a)(1); see 26 U.S.C. § 6672. Thus, the § 6672 taxes incurred for United and Boss are not governed by § 7491 and the burden shifting provisions of § 7491 do not apply.

### 1.  § 6672 Liabilities

Wallis challenges the methods the Service used to calculate his § 6672 liabilities, contending that the "Revenue officers did not use actual wage records available to it – the VEC [Virginia Employment Commission] employment records that were in the IRS file…but instead guessed as to the amount of wages paid by UAH [United] in each quarter of 2001." Dkt. No. 195, p. 6.  This caused, Wallis argues, a large discrepancy in the correct amount owed which placed him above the Chapter 13 debt limit. See Dkt. No. 195, p. 7–11.  Blunt's declaration shows that the calculations in the certificate of assessments give Wallis "the benefit of that VEC data when helped him but not when it would have increased the amount he owed"— in which case the United States proposed a final judgment that was consistent with the Service's original assessments. Dkt. No. 198-2, p. 5.   As the district court already stated in regards to United and Boss, the VEC "evidence only bolsters the IRS's § 6020(b) estimates…[i]n addition, the difference between the returns for Boss for the quarters ending March 31, 2001 and September 30, 2001 and the VEC record favors Wallis over $2,000." Dkt. No. 185, p. 13–14.

Wallis disagrees though, arguing that the "IRS cherry-picked the highest possible number from the data…even though Blunt said in his Declaration that he picked the lowest possible number…", resulting in an over-assessment Dkt. No. 205, p. 6, 13.  Specifically, he contends that the Service used the wrong amount of total wages for United in the first and second quarters of 2000 and the first and second quarters of 2001, and for Boss in the second, third, and fourth quarters of 2002. Dkt. No. 205, p. 9–12.

Wallis's argument is unpersuasive.  The district court found the VEC records to only bolster the Service's estimates, citing to how "the total wages paid by United in 2001 equaled $295,726.41, while the § 6020(b) return estimated total wages as $298,397.28." Dkt. No. 185, p.

14.  Wallis also arrives at his proposed tax calculations for United and Boss by "cherry-picking" from entries in the recently obtained VEC data, relying on the characterization of the records by his counsel rather than evidence from a knowledgeable witness.  Statements by counsel are not evidence though, and Wallis has not provided a qualified witness to interpret the provided data. See Fed. R. Civ. P. 56(c); 11-56 MOORE'S FED. PRACTICE - CIVIL § 56.90 (2015).  Further, the district court has ruled that "[e]ven assuming, *arguendo*, that Wallis's evidence did provide a concrete determination that the Service overestimated the amount of his § 6672 liability, such overestimation would be the result of his own actions as he allowed important evidence to be destroyed." Dkt. No. 185, p. 14.  Judge Moon noted that "Wallis, 'who has abandoned the advantage of mathematical precision by failing to keep adequate records[,] cannot complain that the [Service's] assessment is based on estimates.'" Dkt. No. 185, p. 15.  Thus, when the Service made certain of the assessments pursuant to 26 U.S.C. § 6020(b) after Wallis failed to file Forms 941 for his companies; such assessments are *prima facie* valid.  Wallis is unable to meet his burden in contesting the assessment when his actions required the need for these estimates and he has failed to provide any meaningful proof that the numbers he provides in regards to United and Boss are more accurate or valid.

Wallis also asserts that the Service used the wrong withholding rate to calculate United's and Boss's liabilities, claiming that the Service should have used an 11% withholding rate instead of 20% when preparing Form 941 substitute returns under § 6020(b). Dkt. No. 205, p. 7. Wallis points to other 941 returns that United and Boss filed, which show an 11% withholding rate for employees' wages for federal income tax purposes. Dkt. No. 205, p. 7.  The Service conceded during oral argument that the Forms 941 filed by United and Boss had an 11% withholding rate, but that it used a 20 % rate for the substitute 941s as it does for every other tax

payer for whom it files a substitute 941. Dkt. No. 217, p. 34. Thus, I find the 20% withholding rate was proper. Regardless, the district court has ruled that any overestimation of Wallis's § 6672 liability resulted from his failure to keep adequate records, which precludes his challenge to the Service's estimates.

Wallis next argues that the Service incorrectly assessed Boss's § 6672 liabilities in 2002, using substitute § 6020(b) returns rather than the Forms 941 submitted by Boss in 2002. Dkt. No. 205, p. 14. However, as Blunt explained in his declaration prior to the summary judgment hearing, Boss's 2002 filings did not fully satisfy Boss's liabilities and so he assessed the outstanding amount. Dkt. No. 138-5, p. 5–6. Wallis never disputed that he failed to fully pay this tax by contesting the relevant declarations or attaching copies of any checks. Wallis's argument then seems to rest solely on Revenue Officer Simone Wilson-Pinchback's ("Pinchback") November 6, 2015 declaration where she identified in a table the total amount of wages paid by Boss, as indicated by the VEC records. Dkt. No. 153-31, p. 5. The inclusion of these VEC numbers though, without more, fails to provide an adequate basis for Wallis's argument, especially when the record seems to indicate no substitute returns were created for Boss in 2002. Indeed, in a separate declaration, Pinchback never discussed preparing substitute returns for Boss in 2002. Instead, she stated she prepared them for Boss for the quarters ending December 31, 2000, March 31, 2001, and September 30, 2001. Dkt. No. 138-10, p. 5–6. She then attached the copies of the Forms 941 submitted by Boss for the quarters ending June 30, 2002, September 30, 2002, and December 31, 2002. Dkt. No. 138-10, p. 6. Since Wallis has not provided any evidence outside of his self-serving statements and statements from his own attorney interpreting the records, the claim as to Boss's assessed § 6672 liabilities in 2002 lacks merit.

9

### 2. Personal Income Tax

Wallis also takes issue with how the Service calculated the amount of unpaid personal income taxes, relying on statements by his attorney which provide his attorney's calculations based on the methodology he thinks is most appropriate. Dkt. No. 205, p. 16–17.  Wallis maintains that the Service double counted the interest accrued, but the declaration of Blunt shows that Wallis relied on an internet calculator that differs greatly from the Service's information systems used for assessments, and Wallis's calculator is "neither intended for nor capable of calculating the interest that accrued and compounded daily over more than a decade." Dkt. No. 206, p. 11–12.  Wallis's argument is unpersuasive where, as here, the evidence from the Service and Revenue Officer Blunt includes the relevant tax transcripts and the Service's calculation of tax due printed using the Service's interest calculating tools, which are designed to calculate the correct amount of interest in these cases. See Dkt. No. 198-2, p. 5; Dkt. No. 198-3; Dkt. No. 226-1, p. 1–2; Dkt. No. 226-2.

## CONCLUSION

For the reasons set forth above, I hereby **RECOMMEND** that United States' motion for entry of final judgment (Dkt. No. 198) be **GRANTED** and judgment **ENTERED** in favor of the government and against Wallis, as set forth below:

(1) Personal income tax (Form 1040):

| Tax Period | Final Judgment Amount |
|---|---|
| 1998 | $17,341.60 |
| 1999 | $15,098.88 |
| 2000 | $13,700.36 |
| 2002 | $10,445.64 |
| Total: | $56,586.48 |

(2) United American Holdings, Inc. quarterly employee withholding tax:

| Tax Period | Final Judgment Amount |
|---|---|
| 03/31/1999 | $19,443.81 |
| 06/30/1999 | $21,448.24 |
| 09/30/1999 | $21,298.73 |
| 03/31/2000 | $18,096.06 |
| 06/30/2000 | $52,887.56 |
| 09/30/2000 | $39,858.94 |
| 12/31/2000 | $47,047.05 |
| 03/31/2001 | $37,047.05 |
| 06/30/2001 | $44,453.55 |
| 09/30/2001 | $41,120.10 |
| Total: | $342,701.09 |

(3) Boss Management Group, Inc. quarterly employee withholding tax:

| Tax Period | Final Judgment Amount |
|---|---|
| 12/31/2000 | $5,442.64 |
| 03/31/2001 | $10,843.29 |
| 09/30/2001 | $10,843.29 |
| 06/30/2002 | $3,884.34 |
| 09/30/2002 | $1,091.29 |
| 12/31/2002 | $3,325.98 |
| Total: | $35,430.83 |

Additionally, statutory interest, penalties, and costs as of July 25, 2016, which have accrued and continue accruing pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c), are assessed against Wallis.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days

11

hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

It is so **ORDERED**.

Entered:  February 1, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge